UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **BEN THOMPSON** | : | CIVIL ACTION NO.:  2:16-cv-00208 |
| | : | |
| VS. | : | JUDGE JAMES D. CAIN, JR. |
| | : | |
| **THE GEO GROUP, INC.** | : | MAGISTRATE JUDGE KATHLEEN KAY |

# DEFENDANT'S POST-TRIAL BRIEF

Counsel for **The GEO Group, Inc.**, Defendant, submits the following post-trial brief to the Court and opposing counsel:

**I.   APPLICATION OF THE LOUSIANA SUPREME COURT CASE OF <u>HOFFMAN</u> TO PLAINTIFF'S CLAIMED MEDICAL EXPENSES**

Plaintiff submitted medical expenses to this Court through Exhibit F and Exhibit C. Exhibit F included a summary of plaintiff's medical bills along with certain attached bills. With regard to Dr. Shamieh, the summary indicated a total of $32,850. The attached records in support of this total came from health insurance claim forms executed by Dr. Shamieh's office on March 28, 2018.

Dr. Shamieh's certified medical records were also submitted by plaintiff, as Exhibit C. Exhibit C contains a statement of account from Dr. Shamieh's office, on page 21, dated August 9, 2019. The total charges reported by Dr. Shamieh on page 21 of Exhibit C are $46,025. The total payments reported by Dr. Shamieh are $16,792.62. The remaining balance reported by Dr. Shamieh's August 9, 2019 statement of account totals $1,250. Plaintiff's Exhibit C at page 21 clearly shows that plaintiff only owes Dr. Shamieh the amount paid to date, $16,792.62, plus the

1

outstanding balance of $1,250, or a grand total of $18,042.62. The difference between this amount, $18,042.62, and the original amount charged, $46,025, was written off by Dr. Shamieh's office and is no longer owed by or on behalf of Ben Thompson.

Under the principles outlined in Hoffman v. 21st Century North American Insurance Company, 2014-C-2279 (La.10/2/15), 209 So.3d 702, defendant is entitled to the documented write-down, the amount actually paid and accepted, between plaintiff's counsel and Dr. Shamieh's office. Therefore, the total amount that could ever be due to Mr. Thompson as special damages in this case, for Dr. Shamieh's treatment, would be $18,042.62.

In Hoffman, the Louisiana Supreme court wrote:

> Here, the plaintiff contends his entire medical bill totaling $3,000.00 is recoverable under the collateral source rule, rather than only the amount actually paid and accepted by the provider. We disagree, as explained below, because we find the collateral source rule does not apply to attorney-negotiated write-offs or discounts for medical expenses obtained as a product of the litigation process.
>
> On the record before us, there is no real dispute that Mr. Hoffman's attorney negotiated the discount on the medical statement from the imaging center. Although there is no specific evidence or testimony in the record regarding the origin of the write-off, such as a contract or agreement, the notations on the medical statement speak for themselves.

Hoffman, at page 706.

Likewise, in the instant case, page 21 of Exhibit C clearly evidences the charges, noted as legal, and then Dr. Shamieh writing off the difference between the payment, from counsel, and the total charge.

The Supreme Court's holding in Hoffman clearly applies to this situation. Hoffman held:

> We decline to extend the collateral source rule to attorney-negotiated medical discounts obtained through the litigation process. We hold that such a discount is not a payment or benefit that falls within the ambit of the collateral source rule. First, allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code. The wrongdoer is responsible only for the damages he or she has caused. La. Civ.Code art. 2315. The plaintiff has suffered no diminution of his patrimony to obtain the write-off, and, therefore, the defendant in this case cannot be held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay. Because the evidence

2

> before the trial court was that Mr. Hoffman paid $950.00 for the MRIs, he is not entitled to recover any additional amount. Any recovery above $950.00 for the MRIs would amount to a windfall and force the defendant to compensate the plaintiff for medical expenses the plaintiff has neither incurred nor is obligated to pay.

Hoffman, at pages 706-707.

## II.   CAUSATION CANNOT BE ESTABLISHED WITHOUT CREDIBILITY.

Mr. Thompson was struck in the head/neck area with a Styrofoam ceiling tile while incarcerated at the Allen Parish Correctional Center run by defendant. Because defendant at the time was working through issues with the ceiling tiles, defendant stipulated to liability for the accident. What defendant has not stipulated to is causation for every complaint and/or treatment provided to Mr. Thompson after the incident.

It is Mr. Thompson's burden to establish that all of his aches and pains, as well as his subsequent medical treatment, were caused by the ceiling tile incident. Specifically, it is Mr. Thompson's burden to prove that his complaints of pain to his head, eyes, ears, neck, legs, feet, and private parts, were caused by the ceiling tile incident as opposed to being caused by Mr. Thompson's numerous subsequent accidents, or simply made up by him.

More than just questioning Mr. Thompson's credibility for this causation issue, defendant has established, through the direct testimony of Dr. Roundtree, that Mr. Thompson's symptoms which he complained of by the time of his cervical surgery were unrelated to the Styrofoam ceiling tile striking him in the head/neck area. Instead, we have shown that Mr. Thompson's subsequent complaints were more likely than not related to his multitude of subsequent accidents and injuries (or simply fabricated by him) after this ceiling tile incident.

The only evidence in support of Mr. Thompson's complaints, at the time of his surgery, being related to the Styrofoam ceiling tile incident comes from Mr. Thompson himself and Dr. Shamieh. Dr. Shamieh's records are contained in plaintiff's Exhibit C. Dr. Shamieh preformed a

3

records review for Thompson's counsel, and then saw Thompson only once, on July 31, 2017. Dr. Shamieh concluded his initial report from that day with the following paragraph:

> Given the history reported by the patient regarding the timing of the onset of symptoms, the medical records, the patient's history regarding prior medical treatment, coupled with the physical exam and imaging, it is my opinion that the injuries from the above noted accident, are more likely than not, the cause of the treatment provided by me. (Exhibit C, page 10)

Notably, Dr. Shamieh did not mention in his report any of Thompson's subsequent accidents discussed in Thompson's medical records. Thompson's subsequent accidents/injuries are certainly an issue with regard to causation in this case. Further, like any causation determination, Dr. Shamieh had to accept Thompson's self-reporting of complaints after the Styrofoam incident as accurate to render his causation opinion. If anything, Mr. Thompson's direct testimony at the trial of this matter calls Mr. Thompson's honesty and credibility into question. If Mr. Thompson was not 100% honest with Dr. Shamieh about his complaints, subsequent accidents/injuries, and the relation of his multiple subsequent accidents/injuries to those complaints, Dr. Shamieh's causation opinion, through no fault of his, is invalid.

While Dr. Shamieh discussed some of Mr. Thompson's subsequent accidents/injuries in his deposition, it is clear from the deposition testimony that he did not discuss any of those accidents or injuries with Thompson during his one-time evaluation of Thompson. As an example, at page 13 of Dr. Shamieh's deposition, he was asked about Thompson's September 2015 report of picking up an ice chest yesterday, hearing a strong pop in his neck, and having shooting pains in his head and ears immediately thereafter. It is clear from Dr. Shamieh's response that this subsequent accident and injury was never discussed with Thompson directly. According to Dr. Shamieh, the prison records showed that Thompson's complaints were the same before and after the ceiling tile incident, therefore he related everything to the ceiling tile incident. This case is not that straightforward.

4

Again, page 17 of Dr. Shamieh's deposition, when he is questioned about Thompson falling in the bathroom and striking his head, it is clear that Dr. Shamieh had not specifically discussed this accident/injury with Mr. Thompson at all during his one-time evaluation of Mr. Thompson. Dr. Shamieh then opined that it was possible that Thompson could have herniated the disc in his neck, later seen by Dr. Shamieh on MRI, in this accident. This bathroom accident occurred on November 1, 2015. Mr. Thompson's MRI was performed in February of 2017. Thompson was not even seen by Dr. Shamieh for the first time until July of 2017.

Assuming that Dr. Shamieh did actually question Mr. Thompson concerning his accidents and injuries after the Styrofoam ceiling tile fell on him, of which there is no indication either in Dr. Shamieh's records or deposition, Dr. Shamieh's eventual opinion as to causation is valid only if we assume Mr. Thompson was honest in his self-reporting of his complaints and subsequent accidents to Dr. Shamieh.

Stated another way, this Court must determine that Mr. Thompson is credible to relate any of his complaints, by the time of his surgery in March 2018, to the Styrofoam ceiling tile incident in February of 2015. In evaluating Mr. Thompson's credibility, I respectfully submit to the Court that the following issues have to be considered:

1. Mr. Thompson's in-court testimony, which clearly conflicted with his deposition testimony, dealing with the ceiling tile being Styrofoam, or some much harder substance as he tried to testify to in Court;

2. Mr. Thompson's felony criminal conviction for armed robbery;

3. Mr. Thompson's refusal to abide by his adjudicated conviction and absconding thereafter;

4. Mr. Thompson's trial testimony describing his multiple subsequent accidents, documented in his medical records, which in-court description was very different from the descriptions in the medical records themselves as well as the testimony of Dr. Roundtree on these same issues:

5. Mr. Thompson's in-court testimony dealing with multiple medical providers explaining their opinion that Thompson presented with complaints inconsistent with his actions, movements, and physical exams;

6. Mr. Thompson admitting to and describing significant fights in prison, including being stabbed multiple times and fighting upwards of six people in one incident, and Mr. Thompson's claims that he received no injuries to his neck, or even an aggravation to his existing neck injuries, in these brawls;

7. Mr. Thompson's detailed descriptions of being physically capable of and actually beating up multiple individuals at one time yet also claiming he was in so much pain, during that same period of time because of our accident, that he could barely move his neck to the left at all; and

8. Several incidents of Mr. Thompson threatening medical staff at the prison when they would not accept his inconsistent presentations and complaints at face value, as well as Mr. Thompson's in-court testimony trying to explain his threats made to medical providers by blaming the providers of fabricating their description of his threats and asserting that such threats were actually made up by the providers. I can only imagine Mr. Thompson returning to sick call and confronting these same providers that he made threats to, if somehow he is rewarded through this lawsuit for his actions.

In looking for cases dealing with credibility issues, and the lack of candor shown by Mr. Thompson in this case, I found the State First Circuit Case of Villavasso v. Farwell, 2017-CA-0993 (May 2, 2018, 243 So.3d 1078.) which I think is helpful to consider. In Villavasso, the First Circuit wrote:

> Mr. Villavasso's lack of candor during his testimony, coupled with inconsistent statements regarding his injuries, affected the trial court's findings regarding his credibility. The plaintiff's credibility, especially as to causation, was of great importance in this case, as it was in Turner v. Cleveland Tr. Co. Id. In Turner, this Court found that the plaintiff's credibility problems coupled with the lack of objective medical evidence resulted in the plaintiff's failure to demonstrate a causal connection between her fall and the injuries she sustained. Id. This Court found the trial court properly dismissed most of Turner's claims for subsequent injuries because she failed to link those injuries to her fall instead of her subsequent car accident. Id. at 879–80. Similarly, the plaintiff in Turner suffered additional injury in a car accident which occurred after her initial fall and treatment with a chiropractor. Id. at 874. (Villavasso, at page 1083)

This Court also has Dr. Noble's deposition and report, which was offered as his trial testimony. While Dr. Noble did not have the opportunity to evaluate Mr. Thompson in person, he did go through Mr. Thompson's records in detail. Significantly, after reviewing all of Mr. Thompson's records, it was Dr. Noble's opinion, as expressed on page 88 of his deposition, that he could not relate Mr. Thompson's symptoms prior to his cervical surgery in 2018 to the Styrofoam ceiling tile accident in 2015. Further, when I asked, on page 89 of Dr. Noble's

6

deposition, whether he could relate all of Thompson's complaints, by the time of his surgery in 2018, to the ceiling tile incident in 2015, Dr. Noble testified: "No. I definitely can't say that."

Lastly, I would refer the Court to Dr. Roundtree's deposition as well as my previous brief outlining multiple examples in Dr. Roundtree's deposition testimony. Dr. Roundtree testified about Thompson's injuries after the ceiling tile incident, accidents after the ceiling tile incident, threats to the providers after the ceiling tile incident, malingering traits described by medical providers after the ceiling tile incident, evaluations by a neurological specialist after Mr. Thompsons ceiling tile incident, and Dr. Roundtree's personal opinion that because of all these issues, by September of 2016, Thompson's complaints were no longer related to the ceiling tile incident, but instead were related to the multitude of other accidents/injuries noted in Mr. Thompson's records which occurred thereafter. (See deposition of Dr. Roundtree, at pages 120-122.) I would submit to the Court that Dr. Roundtree's opinion, from a physician that followed Mr. Thompson's care for years, should carry more weight than Dr. Shamieh, who only saw Mr. Thompson one time prior to surgery and who obviously never discussed these issues with Mr. Thompson directly.

### III. BEN THOMPSON'S 8TH AMENDMENT CLAIMS UNDER SECTION 1983 SHOULD BE DISMISSED.

Thompson's petition fails to name any individual actor with regard to his 8th Amendment claims. While it is possible to establish a constitutional deprivation by an entity, a plaintiff has to establish that it is the official policy or custom of that entity which led to the claimed depravation. Plaintiff failed to come forth with any such evidence during his case in chief. Therefore, his claims against The GEO Group, Inc. under Section 1983 for alleged 8th Amendment violations must be dismissed. Monell v. Department of Social Servs. (1978) 436 US 658, 690–91, 56 L Ed 2d 611, 98 S Ct 2018, 17 BNA FEP Cas 873, 16 CCH EPD ¶ 8345. St. Louis v. Praprotnik (1988) 485 US 112, 121–23, 99 L Ed 2d 107, 108 S Ct 915, 3 BNA IER Cas 273, 14 FR Serv 3d 412, on remand (CA8) 879 F2d 1573, 4 BNA IER Cas 872, reh den (1989, CA8).

7

## IV. CONCLUSION

I respectfully submit to this Court that Mr. Thompson has no credibility. His trial testimony conflicts with his own deposition testimony. His trial testimony conflicts with his medical records and the testimony of Dr. Roundtree.

Not only is Mr. Thompson not credible, but his actions go much further. The evidence shows that Mr. Thompson uses threats and intimidation against the medical staff when they do not blindly accept his complaints which are glaringly inconsistent with his presentations. Like most habitual liars, Mr. Thompson then blames the medical staff for manufacturing the claimed threats that he made to them. Such behavior should never be rewarded.

Because of the above, Mr. Thompson cannot establish, more likely than not, that his symptoms which he was complaining of at the time of his cervical surgery were related solely, or in any way, to his Styrofoam ceiling tile accident in 2015. Therefore, none of Mr. Thompson's surgery expenses should be awarded as damages against defendant.

At most, Mr. Thompson suffered a muscular spraining or straining injury, of limited duration, from his ceiling tile incident. According to Dr. Roundtree's testimony, the injuries likely related to the ceiling tile incident were resolved at least by September of 2016. (See deposition of Dr. Roundtree, at pages 120-122.)

Alternatively, if this Court finds that Mr. Thompson's Styrofoam ceiling tile incident contributed in any way to his surgery, its contribution should be something less than 15% based on Mr. Thompson's history, and the evidence in this case.

If Mr. Thompson is awarded any of his surgical expenses, defendant should receive the Hoffman credit with regards to Dr. Shamieh's write-downs as no amount over the write-downs are owed by Mr. Thompson.

Lastly, plaintiff's Section 1983 claims asserting 8th Amendment violations against GEO should be dismissed.

8

Respectfully submitted,

**PLAUCHÉ, SMITH & NIESET, L.L.C.**

By: */s/ V. Ed McGuire III*
 **V. ED McGUIRE III**
LA Bar No. 23861
P.O. Drawer 1705
Lake Charles, LA 70602
Telephone: (337) 436-0522

Counsel for Defendant, **THE GEO GROUP, INC.**